Orlando Villalba (SBN 232165)
Orlando.Villalba@capstonelawyers.com
Helga Hakimi (SBN 257381)
Helga.Hakimi@capstonelawyers.com
Roxanna Tabatabaeepour (SBN 260187)
Roxanna.Taba@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Nathan Verdugo

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN VERDUGO, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>vs.<br><br>BLUESCOPE BUILDINGS NORTH AMERICA, INC., a Delaware corporation; BLUESCOPE CONSTRUCTION, INC., a Delaware corporation; BLUESCOPE STEEL AMERICAS LLC, a Delaware limited liability company; BLUESCOPE STEEL NORTH AMERICA CORPORATION, a Delaware corporation; ASC PROFILES LLC, a Delaware limited liability company; STEELSCAPE LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  1:22-cv-01067-ADA-SAB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT & ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698, *ET SEQ.***<br><br>(1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime);<br>(2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages);<br>(3) Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods);<br>(4) Violation of California Labor Code §§ 226.7, 516, and 1198 (Failure to Authorize and Permit Rest Periods);<br>(5) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records);<br>(6) Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination);<br>(7) Violation of California Labor Code § 204 (Failure to Timely Pay Wages During Employment);<br>(8) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses); |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(9) Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*;

(10)    Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and

(11)    Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

Plaintiff Nathan Verdugo, individually and on behalf of all other members of the public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved employees, alleges as follows:

## JURISDICTION AND VENUE

1.      This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover wages and all other available relief on behalf of Plaintiff and all similarly situated current and former non-exempt, hourly paid employees of Defendants, and non-class representative enforcement action brought pursuant to the Labor Code Private Attorneys General Act of 2004, California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief on behalf of Plaintiff, the State of California, and other current and former employees who worked for Defendants in California as non-exempt, hourly paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.

2.      This Court has original jurisdiction this action pursuant to 28 U.S.C. § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

3.      Venue is proper in this Court, because this case was originally filed in the Superior Court of California for the County of Tulare.  Venue properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(a), 1391(b), and 1441(a).

4.      The PAGA statute authorizes aggrieved employees to sue directly as the proxy of the State of California for civil penalties for violations of various provisions in the California Labor Code.

## THE PARTIES

5.      Plaintiff Nathan Verdugo is a resident of Woodlake, in Tulare County, California.  Defendants employed Plaintiff as an hourly paid, non-exempt employee from approximately February 2012 to March 2022.  Plaintiff worked as a Welder, Welder II, Weld

Trainer, and Quality Inspector at Defendants' facility in Visalia, California.    During his employment, Plaintiff typically worked ten (10) to eleven (11) hours per day and six (6) days per week.    As a Welder/Weld Trainer, Plaintiff's primary job duties included, without limitation, welding beams, training other employees on welding, and assembling frames.    As a Quality Inspector, Plaintiff's primary job duties included, without limitation, confirming beams were up to code, confirming welds matched the weld criteria, confirming products were built correctly, training other employees, and inspecting beams.

6.    BLUESCOPE BUILDINGS NORTH AMERICA, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

7.    BLUESCOPE CONSTRUCTION, INC. was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

8.    BLUESCOPE STEEL AMERICAS LLC was and is, upon information and belief, a Delaware limited liability company, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

9.    BLUESCOPE STEEL NORTH AMERICA CORPORATION was and is, upon information and belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

10.    ASC PROFILES LLC was and is, upon information and belief, a Delaware limited liability company, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

11.    STEELSCAPE LLC was and is, upon information and belief, a California limited liability company, and at all times hereinafter mentioned, an employer whose employees are engaged throughout this county and the State of California.

12.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities

become known.

13.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, or managers of BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; and STEELSCAPE LLC at all relevant times.

14.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; STEELSCAPE LLC; and/or DOES 1 through 10 (collectively, "Defendants" or "BLUESCOPE"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

15.    At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

16.    Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

17.    Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff and class members.  Each Defendant had the power to hire and fire Plaintiff and class members, supervised and controlled their work schedule and/or conditions of employment, determined their rate of pay, and

maintained their employment records.  Defendants suffered or permitted Plaintiff and class members to work and/or "engaged" Plaintiff and class members so as to create a common-law employment relationship.  As joint employers of Plaintiff and class members, Defendants are jointly and severally liable for the civil penalties and all other relief available to Plaintiff and class members under the law.

18.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class members because Defendants have:

(a)    jointly exercised meaningful control over the work performed by Plaintiff and class members;

(b)    jointly exercised meaningful control over Plaintiff's and class members' wages, hours, and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff and class members;

(c)    jointly required that Plaintiff and class members perform work which is an integral part of Defendants' businesses; and

(d)    jointly exercised control over Plaintiff and class members as a matter of economic reality in that Plaintiff and class members were dependent on Defendants, who shared the power to set the wages of Plaintiff and class members and determined their working conditions, and who jointly reaped the benefits from the underpayment of their wages and noncompliance with other statutory provisions governing their employment.

19.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times there has existed a unity of interest and ownership between Defendants such that any individuality and separateness between the entities has ceased.

20.    BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL

NORTH AMERICA CORPORATION; ASC PROFILES LLC; STEELSCAPE LLC; and DOES 1 through 10 are therefore alter egos of each other.

21.    Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them under the name BLUESCOPE.

22.    Plaintiff further alleges, upon information and belief, that Defendants BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; and STEELSCAPE LLC; are alter egos of each other for the following reasons:

(a)    According to BlueScope Steel Limited's Annual Report for 2020/2021[1], BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; and STEELSCAPE LLC are subsidiaries of BlueScope Steel Limited;

(b)    On the California Secretary of State's website (https://bizfileonline.sos.ca.gov/), BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; and BLUESCOPE STEEL NORTH AMERICA CORPORATION have the same entity address and mailing address, which is "1540 Genessee Street, Kansas City, Missouri 64102";

(c)    According to the most recent "Statement of Information" forms filed with the California Secretary of State, BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; and BLUESCOPE STEEL NORTH AMERICA CORPORATION share

---

[1]    FY2020/21 Annual Report, "Annual Reports – Bluescope Corporate" https://www.bluescope.com/investors/annual-reports/ (last accessed July 13, 2022).

common officers, including, but not limited to, Secretary Mishca Waliczek;

(d)  According to the most recent "Statement of Information" forms filed with the California Secretary of State, BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; and STEELSCAPE LLC; share the same agent for service of process, "C T CORPORATION SYSTEM"; and

(e)  On information and belief, BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; and STEELSCAPE LLC utilize the same standardized employment forms and issue the same employment policies.

## GENERAL ALLEGATIONS

23.  Defendants are leading steel producers that provide steel materials, products, systems, and technologies across North America.  Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their company headquarters in Kansas City, Missouri, which is responsible for the recruiting and hiring of new employees, and communicating and implementing Defendants' company-wide policies, including timekeeping policies and meal and rest period policies, to employees throughout California.

24.  In particular, Plaintiff and class members, on information and belief, received the same standardized documents and/or written policies.  Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.  Upon

1    information and belief, Defendants set forth uniform policies and procedures in several

2    documents provided at an employee's time of hire.

3        25.    Upon information and belief, Defendants maintain a centralized Payroll

4    department at their company headquarters in Kansas City, Missouri, which processes payroll

5    for all non-exempt, hourly paid employees working for Defendants at their various locations

6    and jobsites in California, including Plaintiff and class members.  Based upon information and

7    belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid

8    employees in California, irrespective of their work locations.  Upon information and belief,

9    Defendants process payroll for departing employees in the same manner throughout the State

10   of California, regardless of the manner in which each employee's employment ends.

11       26.    Defendants continue to employ non-exempt or hourly paid employees in

12   California.

13       27.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

14   mentioned, Defendants were advised by skilled lawyers and other professionals, employees and

15   advisors knowledgeable about California labor and wage law, employment and personnel

16   practices, and about the requirements of California law.

17       28.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class

18   members were not paid for all hours worked because all hours worked were not recorded.

19       29.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

20   should have known that Plaintiff and class members were entitled to receive certain wages for

21   overtime compensation and that they were not receiving certain wages for overtime

22   compensation.

23       30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

24   should have known that Plaintiff and class members were entitled to be paid at a regular rate of

25   pay, and corresponding rates of pay for overtime wages and/or meal and rest period premiums,

26   that included as eligible income all renumeration required by law, including but not limited to,

27   all income derived from incentive pay, nondiscretionary bonuses, shift differential pay, and/or

28   other forms of compensation, but failed to include all forms of remuneration in calculating the

1    regular rate of pay for Plaintiff and class members.

2        31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

3    should have known that Plaintiff and class members were entitled to receive at least minimum

4    wages for compensation and that they were not receiving at least minimum wages for work that

5    was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and

6    class members were not paid at least minimum wages for work done off-the-clock.

7        32.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

8    should have known that Plaintiff and class members were entitled to meal periods in accordance

9    with the California Labor Code and applicable IWC Wage Order or payment of one (1)

10   additional hour of pay at their regular rates of pay when they were not provided with timely,

11   uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not

12   provided with all meal periods or payment of one (1) additional hour of pay at their regular rates

13   of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

14       33.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

15   should have known that Plaintiff and class members were entitled to rest periods in accordance

16   with the California Labor Code and applicable IWC Wage Order or payment of one (1)

17   additional hour of pay at their regular rates of pay when they were not authorized and permitted

18   to take a compliant rest period.  In violation of the California Labor Code, Plaintiff and class

19   members were not authorized and permitted to take compliant rest periods, nor did Defendants

20   provide Plaintiff and class members with payment of one (1) additional hour of pay at their

21   regular rates of pay when they were not authorized and permitted to take a compliant rest period.

22       34.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

23   should have known that Plaintiff and class members were entitled to receive complete and

24   accurate wage statements in accordance with California law.  In violation of the California

25   Labor Code, Plaintiff and class members were not provided complete and accurate wage

26   statements.

27       35.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

28   should have known that they had a duty to maintain accurate and complete payroll records in

accordance with the California Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

36.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within permissible time periods.

37.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within permissible time periods.

38.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they were prohibited from issuing instruments for the payment of wages that were not payable in cash on demand, without discount and with authorization, but did so, in violation of the California Labor Code.

39.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and/or class members were entitled to the portion of wages previously paid and subsequently unlawfully deducted by Defendants.

40.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and/or class members were entitled to payment of wages as designated by statute.  In violation of the California Labor Code, Defendants secretly paid Plaintiff and/or class members lower wages than required by statute while purporting to pay them proper wages.

41.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their

employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

42.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and class members that they were properly denied wages, all in order to increase Defendants' profits.

## PAGA REPRESENTATIVE ALLEGATIONS

43.    At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the LWDA for violations of the California Labor Code and applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on behalf of themselves and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

44.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

45.    Plaintiff and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current or former employees and one or more of the alleged violations were committed against them.

46.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

(a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

(b) An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c) The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice. Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

47. Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a) The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b) An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c) The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative. The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action

1               pursuant to Section 2699 may commence.  If the alleged violation is not

2               cured within the 33-day period, the aggrieved employee may commence

3               a civil action pursuant to Section 2699.

4       48.     On July 21, 2022, Plaintiff provided written notice by online filing to the LWDA

5 and by Certified Mail to Defendants of the specific provisions of the California Labor Code

6 alleged to have been violated, including facts and theories to support the alleged violations, in

7 accordance with California Labor Code section 2699.3.  Plaintiff's written notice was

8 accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA

9 Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case

10 Number LWDA-CM-896860-22.  A true and correct copy of Plaintiff's written notice to the

11 LWDA and Defendants is attached hereto as "Exhibit 1."

12       49.     As of the filing date of this complaint, over 65 days have passed since Plaintiff

13 sent the notice described above to the LWDA, and the LWDA has not responded that it intends

14 to investigate Plaintiff's claims and Defendants have not cured the violations.

15       50.     Thus, Plaintiff has satisfied the administrative prerequisites under California

16 Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for

17 violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a),

18 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

19       51.     Labor Code section 558(a) provides "[a]ny employer or other person acting on

20 behalf of an employer who violates, or causes to be violated, a section of this chapter or any

21 provision regulating hours and days of work in any order of the Industrial Welfare Commission

22 shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for

23 each underpaid employee for each pay period for which the employee was underpaid. . . .  (2)

24 For each subsequent violation, one hundred dollars ($100) for each underpaid employee for

25 each pay period for which the employee was underpaid. . . ."  Labor Code section 558(c)

26 provides "[t]he civil penalties provided for in this section are in addition to any other civil or

27 criminal penalty provided by law."

28       52.     Defendants, at all times relevant to this complaint, were employers or persons

acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

53.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

54.     Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, and section 558, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on his own behalf, as well as on behalf of each and all other persons similarly situated, and thus seeks class certification under Rule 23 of the Federal Rules of Civil Procedure.

56.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

57.     Plaintiff's proposed class consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California, at any time from July 1, 2021, until the date of trial ("Class").

58.     Plaintiff's proposed subclass consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

59.     Members of the Class and Subclass are referred to herein as "class members."

60.     Plaintiff reserves the right to redefine the Class and Subclass and to add additional subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

61.    This action is brought and properly may be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

62.    According to Defendants' removal papers, there are at least 444 non-exempt, hourly paid employees working for Defendants across California during the relevant period. Thus, it is reasonable to presume that the members of the class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

63.    Plaintiff's claims are typical of those of the class members, because Plaintiff suffered the violations set forth in this First Amended Complaint.

64.    Plaintiff will adequately protect the interests of class members.  Plaintiff has no interests that are adverse to or conflict with class members and is committed to the vigorous prosecution of this action.  To that end, Plaintiff has retained counsel who is competent and experienced in handling class actions on behalf of employees.

65.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the amount suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

66.    There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

(a)    Whether Defendants required Plaintiff and class members to work over eight (8) hours per day, over twelve (12) hours per day, or over forty (40) hours per week and failed to pay all legally required overtime compensation to Plaintiff and class members;

(b)    Whether Defendants failed to include all forms of remuneration in the "regular rate" of pay as required by law for purposes of paying overtime

1                 wages and/or meal and rest period premiums to Plaintiff and class

2                 members;

3      (c)      Whether Defendants failed to pay Plaintiff and class members at least

4                 minimum wages for all hours worked;

5      (d)      Whether Defendants failed to provide Plaintiff and class members with

6                 meal periods;

7      (e)      Whether Defendants failed to authorize and permit Plaintiff and class

8                 members to take rest periods;

9      (f)      Whether Defendants provided Plaintiff and class members with complete

10                 and accurate wage statements as required by California Labor Code

11                 section 226(a);

12      (g)      Whether Defendants maintained accurate payroll records as required by

13                 California Labor Code section 1174(d);

14      (h)      Whether Defendants failed to pay earned overtime wages, minimum

15                 wages, and/or meal and rest period premiums due to Plaintiff and class

16                 members upon their discharge;

17      (i)      Whether Defendants failed timely to pay overtime wages, minimum

18                 wages, and/or meal and rest period premiums due to Plaintiff and class

19                 members during their employment;

20      (j)      Whether Defendants issued instruments for the payment of wages that

21                 were not payable in cash on demand and without discount, in violation of

22                 Labor Code sections 212 and 213;

23      (k)      Whether Defendants unlawfully deducted a portion of wages previously

24                 paid to Plaintiff and/or class members, in violation of California Labor

25                 Code sections 221 and 224;

26      (l)      Whether Defendants secretly paid Plaintiff and/or class members lower

27                 wages than required by statute while purporting to pay the proper wages,

28                 in violation of California Labor Code section 223;

(m)  Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(n)  Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(o)  The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

**FIRST CAUSE OF ACTION**

**Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

**(Against all Defendants)**

67.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

68.  Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

69.  California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

70.  Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1 ½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

71.  The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and class members working more than twelve (12) hours in a day,

overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

72.    California Labor Code section 510 codifies the right to overtime compensation at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

73.    During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

74.    First, during the relevant time period, Defendants had, and continue to have, a company-wide policy and/or practice of forcing Plaintiff and class members to work off-the-clock performing tasks outside of their scheduled shift times, because Defendants did not provide a means to account for this time.  For example, Plaintiff and class members were required to change into personal protective equipment ("PPE"), such as hard hats, safety glasses, cut-resistant sleeves and arm guards, and steel-toed boots, at Defendants' facility; however, Defendants did not allow Plaintiff and class members to report the time spent donning their PPE at the beginning of their shifts or to report the time spent doffing their PPE at the end of their shifts as hours worked, despite being on Defendants' premises and under Defendants' control, because the timeclock was located in an area only accessible to employees if they had PPE on. As a result, Plaintiff and class members were required to spend about five (5) minutes donning PPE before clocking in prior to a shift, and about five (5) minutes doffing PPE after clocking out at the end of a shift.  Further, Defendants only permitted Plaintiff and class members to utilize a timekeeping machine located in a different building from the locker room where they

changed, thus exacerbating the amount of time Plaintiff and class members spent off-the-clock and under Defendants' control, time for which they were not paid.

75. Moreover, Defendants required Plaintiff and class members to review newly-implemented company policies while off-the-clock. For example, Plaintiff spent about an hour each year reviewing new policies at home, and was not paid for this time. Thus, Defendants failed to track all hours Plaintiff and class members spent working before clocking in and/or after clocking out, and Plaintiff and class members received no compensation for this time.

76. Second, Plaintiff and class members were similarly required to spend up to five (5) minutes doffing their PPE when they left their work areas to take their unpaid meal periods. and were also required to spend up to five (5) minutes donning their PPE when they returned from their unpaid meal periods, and, as a result, Plaintiff and class members were not always afforded compliant, uninterrupted thirty (30) minute meal periods during shifts in which they were entitled to receive meal periods.

77. Third, Defendants had, and continue to have, a company-wide practice or policy of requiring that Plaintiff and class members carry and respond to a company-issued radio at all times. As a result, Defendants' management contacted Plaintiff and class members on their company-issued radios during unpaid meal periods to discuss work-related matters. For example, Plaintiff would have his meal periods interrupted and/or shortened at least once per month to discuss work-related tasks with Defendants' managers. Defendants knew or should have known that Plaintiff and class members were performing work while off-the-clock in order to meet Defendants' expectations, but failed to compensate them for this time.

78. Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and class members were performing their assigned duties off-the-clock and/or during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Plaintiff and class members worked shifts of eight (8) hours or more a day, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they actually worked.

79.    Furthermore, Defendants did not pay Plaintiff and class members the correct overtime rate for the recorded overtime hours that they generated.  In addition to an hourly wage, Defendants paid Plaintiff and class members incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration.  However, in violation of the California Labor Code, Defendants failed to incorporate all compensation, including incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate.  Therefore, during times when Plaintiff and class members worked overtime and received these other forms of pay, Defendants failed to pay all overtime wages by paying a lower overtime rate than required.

80.    For example, Defendants paid Plaintiff and class members incentive pay and/or nondiscretionary bonuses which were listed on Plaintiff's and class members' wage statements as "Gift Cert Earn."  During pay periods that Plaintiff and class members were paid overtime wages, Defendants did not incorporate the incentive pay and/or nondiscretionary bonuses into Plaintiff's and class members' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked.  Specifically, Defendants paid Plaintiff and class members 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay.  Defendants' failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Plaintiff and class members on a company-wide basis.

81.    Defendants' failure to pay Plaintiff and class members the balance of overtime compensation as required by California law, violates the provisions of California Labor Code sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

//

//

//

**SECOND CAUSE OF ACTION**

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

**Minimum Wages**

**(Against all Defendants)**

82.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

83.     At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined in IWC Wage Order No. 1-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

84.     As set forth above, Defendants maintained policies and/or practices requiring Plaintiff and class members to perform work off-the-clock prior to the start of their shifts, after the end of their shifts, and/or on their days off, including donning and doffing PPE in a building separate from where timekeeping machines were located, and reviewing company policies at home.

85.     Further, as also stated above, due to Defendants' donning/doffing policy and requirement that employees carry and use their company-issued radio to communicate with supervisors during unpaid meal periods, Plaintiff and class members were impeded from taking all uninterrupted meal periods to which they were entitled and were not compensated for the time they continued to perform tasks during meal periods.

86.     Thus, Defendants did not pay minimum wages for all hours worked by Plaintiff and class members.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

87.     Defendants' failure to pay Plaintiff and class members minimum wages violates

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to California Labor Code section 1194.2, Plaintiff and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## THIRD CAUSE OF ACTION

### Violations of California Labor Code, §§ 226.7, 512(a), 516, and 1198—Meal Period Violations

### (Against all Defendants)

88.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

89.    At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012).

90.    At all relevant times herein set forth, California Labor Code sections 226.7, 512(a), 516, and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

91.    At all relevant times herein set forth, Labor Code sections 226.7 and 512(a), and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

92.    First, during the relevant time period, as stated, Defendants had, and continue to have, a company-wide policy and/or practice of requiring employees to doff and don PPE when leaving and re-entering their work areas, which prevented Plaintiff and class members from

taking all timely, uninterrupted meal periods to which they were entitled.  For example, at the start and end of each meal period, Plaintiff was required to doff and don his PPE while off-the-clock, which took about 10 minutes total.  This policy led to significant delays at the start and end of each meal period, resulting in Plaintiff's and class members' meal periods being cut short.

93.    Second, as stated, Defendants had, and continue to have, a company-wide policy and/or practice of requiring that Plaintiff and class members carry a company-issued radio to respond to requests during meal periods.  As a result, Defendants' management contacted Plaintiff and class members on their company-issued radios or in-person during meal periods to discuss work-related matters.

94.    Third, Defendants did not provide Plaintiff and class members with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  During his employment, Plaintiff worked shifts in excess of ten (10) or more hours per day several times, but was never provided a second 30-minute meal period.  Plaintiff and class members did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

95.    At all times herein mentioned, Defendants knew or should have known that, as a result of these policies, Plaintiff and class members were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods.  Defendants further knew or should have known that Defendants did not pay Plaintiff and class members meal period premiums when meal periods were late, interrupted, shortened, and/or missed.

96.    Moreover, Defendants engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided.  Because of this practice and/or policy, Plaintiff and class members have not received premium pay for missed, late, and interrupted meal periods.  Alternatively, to the extent that Defendants did pay Plaintiff and/or class members premium pay for missed, late, and interrupted meal periods, Defendants did not pay Plaintiff and/or class members at the correct rate of pay for premiums because Defendants systematically failed to include all forms of compensation, such as

incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration, in the regular rate of pay. As a result, Defendants failed to provide Plaintiff and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516 and failed to pay the full meal period premiums due.

97.    Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198. Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations**

**(Against all Defendants)**

98.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

99.    At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiff's and class members' employment by Defendants.

100.    At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

101.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest

period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016). Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiff and class members are entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each work day that a required rest period was not authorized and permitted.

102. During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, Defendants' company-wide practices, including requiring that Plaintiff and class members carry a company-issued radio to respond to requests, prevented Plaintiff and class members from being able to take rest periods. As a result of Defendants' practices and policies, Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled. For example, Plaintiff's rest periods were interrupted at least once per month by management reaching out via radio or in person to discuss work-related matters.

103. Furthermore, Defendants maintained and implemented a company-wide on-premises rest period policy, which mandated that Plaintiff and class members remain on the premises during their rest periods. Because Plaintiff and class members were restricted from leaving Defendants' premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as purchasing beverages at a nearby store. Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods.

104. Defendants have also engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Plaintiff and class members have not received premium pay for all missed rest periods. Alternatively, to the extent that Defendants did pay Plaintiff and/or class members one (1) additional hour of premium pay for missed rest periods, Defendants did not pay Plaintiff and/or class members at the correct rate of pay for premiums because Defendants failed to include all forms of compensation, such as incentive pay,

nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration, in the regular rate of pay.  As a result, Defendants denied Plaintiff and class members rest periods and failed to pay them rest period premiums due, in violation of Labor Code sections 226.7 and 516, and the applicable IWC Wage Order.

105.    Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period was not authorized and permitted.

<div align="center">

**FIFTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

</div>

106.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

107.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

108.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements.  For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; the address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and/or meal and rest period premiums, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9).

109.    First, because Defendants did not record the time Plaintiff and Subclass members

spent working off-the-clock, Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiff and Subclass members, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).  Defendants also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct rates of pay for overtime wages, in violation of section 226(a)(9).

110.    Second, because Defendants did not calculate Plaintiff's and Subclass members' regular rate of pay correctly for purposes of paying overtime wages and/or meal and rest period premiums, Defendants did not list the correct amount of gross wages in compliance with section 226(a)(1).  For the same reason, Defendants failed to list the correct amount of net wages in violation of section 226(a)(5).  Defendants also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct rates of pay for overtime wages, meal and rest premiums, and/or paid sick leave, in violation of section 226(a)(9).

111.    Third, and separate from these violations, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to list the correct address of the legal entity of the actual employer in violation of Labor Code section 226(a)(8).  The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment or in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, obtain unemployment benefits, etc.  This includes providing employees with a physical address of the employer and not a Post Office Box. Plaintiff's and Subclass members' wage statements incorrectly list the employer's address as "PO Box 419917, Kansas City, MO 64141" but, according to the California Secretary of State's website, the correct address is "1540 Genessee St, Kansas City, Missouri 64102."

112.    The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a

piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

113.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

114.    California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, Defendants failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Plaintiff and Subclass members, in violation of section 1198.  Furthermore, in light of Defendants' failure to provide Plaintiff and Subclass members with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

115.   Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

<div align="center">

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon Termination**

**(Against all Defendants)**

</div>

116.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

117.   This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and/or meal and rest period premiums that were not timely paid to Plaintiff and those class members no longer employed by Defendants upon their termination.

118.   At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

119.   Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

120.   Defendants' failure to pay Plaintiff and class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the

statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

## SEVENTH CAUSE OF ACTION

**Violation of California Labor Code § 204—Failure to Timely Pay Wages During Employment**

**(Against all Defendants)**

121.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

122.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and/or meal and rest period premiums that were not timely paid to Plaintiff and class members during their employment.

123.    At all times relevant herein set forth, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

124.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

125.    At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

126.    During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages,

1  and/or meal and rest period premiums within the time periods specified by California Labor
2  Code section 204.

3      127.   Defendants' failure to pay Plaintiff and class members all wages due violates
4  Labor Code section 204.  Plaintiff and class members are therefore entitled to recover from
5  Defendants the statutory penalty wages pursuant to California Labor Code section 210.

6  **EIGHTH CAUSE OF ACTION**

7  **Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**

8  **(Against all Defendants)**

9      128.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each
10  and every allegation set forth above.

11      129.   At all times herein set forth, California Labor Code section 2802 provides that
12  an employer must reimburse employees for all necessary expenditures and losses incurred by
13  the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is
14  to prevent employers from passing off their cost of doing business and operating expenses on
15  to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144
16  (2014).  The applicable wage order, IWC Wage Order No. 1-2001, provides that: "[w]hen tools
17  or equipment are required by the employer or are necessary to the performance of a job, such
18  tools and equipment shall be provided and maintained by the employer, except that an employee
19  whose wages are at least two (2) times the minimum wage provided herein may be required to
20  provide and maintain hand tools and equipment customarily required by the trade or craft."

21      130.   During the relevant time period, Plaintiff and class members were required to use
22  their personal mobile devices, including, but not limited to, cellular phones, and/or mobile data
23  to carry out their job duties, but Defendants failed to reimburse them for the costs of their work-
24  related mobile device expenses.  For example, Plaintiff was required to use his personal cellular
25  phone to take and send photographs of equipment and to communicate with management about
26  work-related matters when the phone at his work site was not working.  Although Defendants
27  required Plaintiff and class members to utilize their personal mobile devices to carry out their
28  work-related responsibilities, Defendants failed to reimburse them for these costs.

131.    Defendants could have provided Plaintiff and class members with the actual equipment for use on the job, such as company mobile devices, or Defendants could have reimbursed employees for their mobile device usage.    Instead, Defendants passed these operating costs off onto Plaintiff and class members.

132.    Defendants' company-wide policy and/or practice of passing on their operating costs to Plaintiff and class members violates California Labor Code section 2802.    Defendants have intentionally and willfully failed to reimburse Plaintiff and class members for necessary business-related expenses and costs.

133.    Plaintiff and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest.

<div align="center">

**NINTH CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

**(Against all Defendants)**

</div>

134.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

135.    California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.    Section 2699.5 enumerates Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802.    Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 516 and 1182.12.

136.    Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

(a)    Violation of Labor Code sections 510 and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime pay, as alleged herein;

(b)    Violation of Labor Code sections 226.7, 510, and 1198, and the applicable IWC Wage Order for Defendants' failure to include all forms of remuneration in the "regular rate" of pay as required by law for purposes of paying overtime wages and/or meal and rest period premiums to Plaintiff and other aggrieved employees, as alleged herein;

(c)    Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

(d)    Violation of Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to provide Plaintiff and other aggrieved employees with meal periods, as alleged herein;

(e)    Violation of Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to authorize and permit Plaintiff and other aggrieved employees to take rest periods, as alleged herein;

(f)    Violation of Labor Code sections 226(a) and 1198, and the applicable IWC Wage Order for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees, as alleged herein;

(g)    Violation of Labor Code sections 1174(d) and 1198, and the applicable IWC Wage Order for failure to maintain payroll records, as alleged herein;

(h)    Violation of Labor Code sections 201 and 202 for failure to pay all earned wages upon termination, as alleged herein;

(i)    Violation of Labor Code section 204 for failure to pay all earned wages during employment, as alleged herein;

(j)    Violation of Labor Code sections 212 and 213 for issuing instruments for the payment of wages that were not payable in cash on demand, without discount, and with prior authorization, as set forth below;

(k)    Violation of Labor Code sections 221 and 224 for unlawfully deducting a portion of wages previously paid to other aggrieved employees, as set forth below;

(l)    Violation of Labor Code section 223 for secretly paying other aggrieved employees lower wages than required by statute, while purporting to pay the proper wages, as set forth below; and

(m)    Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily incurred, as alleged herein.

137.    At all times relevant herein, California Labor Code section 212 prohibits employers from issuing any instruments for the payment of wages unless such instruments are negotiable and payable in cash on demand and without discount, at some established place of business in the state, the name and address of which must appear on the instrument. California Labor Code section 212 further prohibits employers from issuing payment of wages due in the form of any scrip, coupon, cards, or other thing redeemable, in merchandise or purporting to be payable or redeemable otherwise than in money.

138.    California Labor Code section 213 permits employers to pay employees via direct deposit so long as the employee authorizes payment via direct deposit.

139.    Under California law, employers are permitted to fulfill their wage payment obligations to employees by using payroll debit cards, but only so long as the employee is given the choice as to whether to accept a payroll debit card as a form of payment. *Johnson v. Sunrise Senior Living Management, Inc.*, No. 16 CV 00443 BRO RAOx, 2016 WL 8929249, *9 (C.D. Cal. May 5, 2016). In *Johnson*, the court stated that the Division of Labor Standards Enforcement ("DLSE") decision deeming payroll debit card program permissible relied heavily on:

> . . . [T]he fact that the pay programs were optional, thereby allowing an employee to either participate in the program or receive his or her pay in some other way, such as direct deposit. Specifically, the DLSE opined that "[t]he success of the described procedure, in practice, will of course require that . . . it is

presented as an *alternative* method for wage payment for which [the employees'] participation is optional." The DLSE also stated, "'[i]t is significant that the program does not mandate employee participation in the Money Network Service and that it is designed to provide an alternative for employees receiving their wage payment. Employees are also given the option of having their pay direct deposited into an account of their choosing. . . .'" (internal citations omitted).

140.    In addition, California law only permits employers to utilize payroll debit card programs if they provide employees with effective access to their wages without discount. The DLSE has interpreted California Labor Code sections 212 and 213 as permitting employer use of payroll debit cards where the following requirements are satisfied:

> . . . (1) [T]he "wages [are] payable at some established place of business in the state and there be at least 30 days of sufficient funds for payment,"; (2) the employees are "fully informed of the service and procedures and that it is represented as an alternative method for wage payment for which their participation is optional,"; (3) the employees receive "an itemized wage statement,"; and (4) "at least one transaction per pay period [is] without fee."

*Ortiz v. Randstad North America, L.P.*, No. C-13-5050 MMC, 2015 WL 6202298 at 3.

141.    Further, the DLSE notes that the Labor Code manifests:

> . . . [A] strong public policy that prohibits an employer (or its agent) from imposing conditions or obstacles which interfere with or prevent an employee's (*sic*) from promptly receiving their due wages *in full*. The imposition of a fee in order to readily *access* one's earned and paid wage under a payroll card program which is designed to discharge the employer's wage payment obligations could impermissibly interfere with an employee's receipt of page wages by creating a financial condition which would have the *effect* of reducing or discounting wages because such fee would be charged against the same account in which wages are deposited." (emphases in original)

*DLSE opinion letter* 2008.07.07. The DLSE has also acknowledged that payroll service providers "effectively act as agents of the client employers in discharging the employer's wage payment obligations." *Id*. In a second opinion letter, the DLSE stated that "[w]hile the Labor Code does not purport to regulate the specific arrangements between employers and payroll service providers, both an employer and, under the express language in Labor Code § 212- their agent, must comply with its requirements." *DLSE opinion letter* 2008.07.07-2.

142.    During the relevant time period, Defendants had a practice and/or policy of

automatically issuing payroll debit cards to departing employees without giving them the option to elect their form of payment for their final wages.  For example, Plaintiff received his final wages on a payroll debit card without a choice of an alternate method of payment, such as a written check.  Instead, Defendants automatically enrolled Plaintiff in their payroll debit card program for the purpose of issuing Plaintiff's final wages to him without prior, voluntary approval from Plaintiff.

143.   Moreover, under Defendants' payroll debit card program, on information and belief, other aggrieved employees did not have easy access to the entirety of their wages without incurring a fee.  For example, other aggrieved employees were unable to withdraw their entire wages in at least one transaction without incurring a fee and/or encountered $3.00 ATM fees each time they utilized an out-of-network ATM to withdraw funds from their payroll debit cards, which resulted in a discount in their pay.

144.   Thus, Defendants' payroll debit card program was and continues to be unlawful as it does not give employees the choice as to whether they would like to receive their wages on a payroll debit card or via some other payment method and did not give Plaintiff and/or other aggrieved employees easy access to the entirety of their wages without discount and without delay.

145.   California courts recognize a policy favoring the full and prompt payment of wages to employees.  Defendants' payroll card program is inconsistent with this policy because it presents a number of obstacles and hurdles that, together, make it difficult for Plaintiff and/or other aggrieved employees to access their entire wages without discount and without delay, in violation of California Labor Code sections 212 and 213.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (g).

146.   At all times relevant herein, California Labor Code section 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.  California Labor Code section 224 also provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a

1    deduction is expressly authorized in writing by the employee."

2    147.    During the relevant time period, Defendants unlawfully deducted a portion of

3    wages previously paid to other aggrieved employees in violation of California Labor Code

4    section 221.  On information and belief, Defendants systematically, and on a company-wide

5    basis, provided other aggrieved employees with payroll debit cards as payment of their wages.

6    Under Defendants' payroll debit card program, other aggrieved employees were assessed

7    various fees in connection with their use of the payroll debit cards.  For example, other

8    aggrieved employees were required to pay per-transaction fees, ATM fees, and/or other fees to

9    obtain and/or spend their earned and due wages.  The fees charged to other aggrieved employees

10   resulted in a discount of their wages.

11   148.    Defendants' payroll debit card program, which resulted in a discount of wages

12   to employees, is tantamount to taking deductions from other aggrieved employees' paychecks

13   without their written authorization and therefore constitutes an unlawful deduction of wages, in

14   violation of Labor Code sections 221 and 224.  Other aggrieved employees are therefore entitled

15   to recover civil penalties pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (g).

16   149.    At all times, California Labor Code section 223 makes it unlawful for an

17   employer to secretly pay wages lower than required by statute while purporting to pay legal

18   wages.

19   150.    During the relevant time period, Defendants willfully and systematically issued

20   payroll debit cards to other aggrieved employees that discounted their wages by charging

21   various fees in connection with the use of the payroll debit cards.  Defendants' payroll debit

22   card program resulted in the payment of less than statutorily required wages to other aggrieved

23   employees.  In doing so, Defendants acted with the intent to deprive other aggrieved employees

24   of statutory wages, including, but not limited to, overtime wages and/or minimum wages, to

25   which they were entitled to under California law.  Thus, Defendants paid other aggrieved

26   employees lower wages than those they were entitled to while purporting that other aggrieved

27   employees were properly paid.

28   151.    Defendants' failure to pay other aggrieved employees the correct designated

wage, while purporting to pay legal wages, is a violation of California Labor Code section 223. Other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (g).

## TENTH CAUSE OF ACTION

### Violation of California Business & Professions Code §§ 17200, *et seq.* –

### Unlawful Business Practices

### (Against all Defendants)

152.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

153.    Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

154.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

155.    Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq.*

156.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

(a)    Requiring non-exempt, hourly paid employees, including Plaintiff and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198 and the applicable IWC Wage Order, as alleged herein;

(b)    Failing to include all forms of remuneration in the "regular rate" of pay

as required by law for purposes of paying overtime wages and/or meal and rest period premiums to Plaintiff and class members, in violation of California Labor Code sections 226.7, 510, and 1198, and the applicable IWC Wage Order, as alleged herein;

(c) Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order, as alleged herein;

(d) Failing to provide uninterrupted meal periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(e) Failing to authorize and permit Plaintiff and class members to take uninterrupted rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(f) Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), and 1198, and the applicable IWC Wage Order, as alleged herein;

(g) Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204, as alleged herein;

(h) Issuing instruments to Plaintiff and class members for the payment of wages that were not payable in cash on demand and without discount, in violation of California Labor Code sections 212 and 213, as set forth below; and

(i) Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code section 2802, as alleged herein.

157. At all times relevant herein, California Labor Code section 212 prohibits

FIRST AMENDED CLASS ACTION COMPLAINT

1    employers from issuing any instruments for the payment of wages unless such instruments are

2    negotiable and payable in cash on demand and without discount.  California Labor Code section

3    213 permits employers to pay employees via direct deposit so long as the employee authorizes

4    payment via direct deposit.

5         158.    Under California law, employers are permitted to fulfill their wage payment

6    obligations to employees by using payroll debit cards, but only so long as the employee is given

7    the choice as to whether to accept a payroll debit card as a form of payment.  *Johnson v. Sunrise*

8    *Senior Living Management, Inc.*, No. 16 CV 00443 BRO RAOx, 2016 WL 8929249, *9 (C.D.

9    Cal. May 5, 2016).    In *Johnson*, the court stated that the Division of Labor Standards

10   Enforcement ("DLSE") decision deeming payroll debit card program permissible relied heavily

11   on:

12              . . . [T]he fact that the pay programs were optional, thereby
                allowing an employee to either participate in the program or
13              receive his or her pay in some other way, such as direct deposit.
                Specifically, the DLSE opined that "[t]he success of the described
14              procedure, in practice, will of course require that . . . it is
                presented as an *alternative* method for wage payment for which
15              [the employees'] participation is optional."  The DLSE also stated,
                "[i]t is significant that the program does not mandate employee
16              participation in the Money Network Service and that it is designed
                to provide an alternative for employees receiving their wage
17              payment.  Employees are also given the option of having their pay
                direct deposited into an account of their choosing. . . ."  (internal
18              citations omitted).

19        159.    In addition, California law only permits employers to utilize payroll debit card

20   programs if they provide employees with effective access to their wages without discount.  The

21   DLSE has interpreted Labor Code sections 212 and 213 as permitting employer use of payroll

22   debit cards where the following requirements are satisfied:

23              . . . (1) [T]he "wages [are] payable at some established place of
                business in the state and there be at least 30 days of sufficient
24              funds for payment,"; (2) the employees are "fully informed of the
                service and procedures and that it is represented as an alternative
25              method for wage payment for which their participation is
                optional,"; (3) the employees receive "an itemized wage
26              statement,"; and (4) "at least one transaction per pay period [is]
                without fee."

27

28   *Ortiz v. Randstad North America, L.P.*, No. C-13-5050 MMC, 2015 WL 6202298 at 3.

160.    Further, the DLSE notes that the Labor Code manifests:

> . . . [A] strong public policy that prohibits an employer (or its agent) from imposing conditions or obstacles which interfere with or prevent an employee's *(sic)* from promptly receiving their due wages *in full*.  The imposition of a fee in order to readily *access* one's earned and paid wage under a payroll card program which is designed to discharge the employer's wage payment obligations could impermissibly interfere with an employee's receipt of page wages by creating a financial condition which would have the *effect* of reducing or discounting wages because such fee would be charged against the same account in which wages are deposited." (Emphases in original)

*DLSE opinion letter* 2008.07.07.  The DLSE has also acknowledged that payroll service providers "effectively act as *agents* of the client employers in discharging the employer's wage payment obligations."  *Id*.  In a second opinion letter, the DLSE stated that "[w]hile the Labor Code does not purport to regulate the specific arrangements between employers and payroll service providers, both an employer and, under the express language in Labor Code § 212- their *agent,* must comply with its requirements."  *DLSE opinion letter* 2008.07.07-2.

161.    During the relevant time period, Defendants had a practice and/or policy of automatically issuing payroll debit cards to departing employees without giving them the option to elect their form of payment for their final wages.  For example, Plaintiff received his final wages on a payroll debit card without a choice of an alternate method of payment, such as a written check.  Instead, Defendants automatically enrolled Plaintiff in their payroll debit card program for the purpose of issuing Plaintiff's final wages to him without prior, voluntary approval from Plaintiff.  Thus, Defendants' payroll debit card program was and continues to be unlawful as it does not give employees the choice as to whether they would like to receive their wages on a payroll debit card or via some other payment method.

162.    California courts recognize a policy favoring the full and prompt payment of wages to employees.  Defendants' payroll card program is inconsistent with this policy because Defendants' program is involuntary and denies Plaintiff and class members of easy access to their wages.  Thus, Defendants' company-wide payroll debit card program violates California Labor Code sections 212 and 213.

163.    As a result of the violations of California law herein described, Defendants

1    unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members have

2    suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

3    164.    Pursuant to California Business & Professions Code sections 17200, *et seq.*,

4    Plaintiff and class members are entitled to restitution of the wages withheld and retained by

5    Defendants during a period that commences four years prior to the filing of this complaint; a

6    permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and

7    class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure

8    section 1021.5 and other applicable laws; and an award of costs.

9    **ELEVENTH CAUSE OF ACTION**

10    **Violation of California Business & Professions Code §§ 17200, *et seq.* –**

11    **Unfair Business Practices**

12    **(Against all Defendants)**

13    165.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

14    and every allegation set forth above.

15    166.    Defendants are "persons" as defined by California Business & Professions Code

16    sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or

17    associations.

18    167.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and

19    harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in

20    fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff seeks to

21    enforce important rights affecting the public interest within the meaning of Code of Civil

22    Procedure section 1021.5.

23    168.    Defendants' activities, namely Defendants' company-wide practice and/or policy

24    of not paying Plaintiff and class members meal and rest period premiums due to them under

25    Labor Code section 226.7, deprived Plaintiff and class members of the compensation guarantee

26    and enhanced enforcement implemented by section 226.7.  The statutory remedy provided by

27    section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and

28    secondarily to shape employer conduct." *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th

1138, 1149 (2015).  The statutory benefits of section 226.7 were guaranteed to Plaintiff and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.*  (*Id.*)

169.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice.  In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest period laws and constitute acts against the public policy behind these laws.

170.    Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by section 226.7 due to Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

<div align="center">

**REQUEST FOR JURY TRIAL**

</div>

Plaintiff requests a trial by jury.

<div align="center">

**PRAYER FOR RELIEF**

</div>

Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff reserves the right to amend his prayer for relief to seek a different amount.

<div align="center">

**Class Certification**

</div>

2.    That this case be certified as a class action;

3.    That Plaintiff be appointed as the representative of the Class and Subclass;

4.    That counsel for Plaintiff be appointed as class counsel.

//

**As to the First Cause of Action**

5.     That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198, and the applicable IWC Wage Order by willfully failing to pay all overtime wages due to Plaintiff and class members;

6.     For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.     For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8.     For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

10.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order by willfully failing to pay minimum wages to Plaintiff and class members;

11.     For general unpaid wages and such general and special damages as may be appropriate;

12.     For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.     For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.     For liquidated damages pursuant to California Labor Code section 1194.2; and

15.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Third Cause of Action**

16.     That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order by

1 willfully failing to provide all meal periods to Plaintiff and class members;

2   17. That the Court make an award to the Plaintiff and class members of one (1) hour

3 of pay at each employee's regular rate of pay for each workday that a meal period was not

4 provided;

5   18. For all actual, consequential, and incidental losses and damages, according to

6 proof;

7   19. For premiums pursuant to California Labor Code section 226.7(c);

8   20. For pre-judgment interest on any unpaid meal period premiums from the date

9 such amounts were due, or as otherwise provided by law;

10   21. For attorneys' fees pursuant to California Code of Civil Procedure section

11 1021.5, or as otherwise provided by law; and

12   22. For such other and further relief as the Court may deem equitable and

13 appropriate.

14 <center>**As to the Fourth Cause of Action**</center>

15   23. That the Court declare, adjudge and decree that Defendants violated California

16 Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order by willfully

17 failing to authorize and permit Plaintiff and class members to take all rest periods;

18   24. That the Court make an award to the Plaintiff and class members of one (l) hour

19 of pay at each employee's regular rate of pay for each workday that a rest period was not

20 authorized and permitted;

21   25. For all actual, consequential, and incidental losses and damages, according to

22 proof;

23   26. For premiums pursuant to California Labor Code section 226.7(c);

24   27. For pre-judgment interest on any unpaid rest period premiums from the date such

25 amounts were due, or as otherwise provided by law;

26   28. For attorneys' fees pursuant to California Code of Civil Procedure section

27 1021.5, or as otherwise provided by law; and

28   29. For such other and further relief as the Court may deem equitable and

<center>Page 44</center>

1 appropriate.

2 **As to the Fifth Cause of Action**

3      30.    That the Court declare, adjudge and decree that Defendants violated the
4 recordkeeping provisions of California Labor Code section 226(a) and the applicable IWC
5 Wage Order as to Plaintiff and Subclass members, and willfully failed to provide accurate
6 itemized wage statements thereto;

7      31.    For all actual, consequential, and incidental losses and damages, according to
8 proof;

9      32.    For injunctive relief pursuant to California Labor Code section 226(h);

10      33.    For statutory penalties pursuant to California Labor Code section 226(e);

11      34.    For attorneys' fees and costs pursuant to California Labor Code section
12 226(e)(1); and

13      35.    For such other and further relief as the Court may deem equitable and
14 appropriate.

15 **As to the Sixth Cause of Action**

16      36.    That the Court declare, adjudge and decree that Defendants violated California
17 Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages,
18 and/or meal and rest period premiums owed at the time of termination of the employment of
19 Plaintiff and other terminated class members;

20      37.    For all actual, consequential and incidental losses and damages, according to
21 proof;

22      38.    For waiting time penalties according to proof pursuant to California Labor Code
23 section 203 for all employees who have left Defendants' employ;

24      39.    For pre-judgment interest on any unpaid wages from the date such amounts were
25 due, or as otherwise provided by law;

26      40.    For attorneys' fees pursuant to California Code of Civil Procedure section
27 1021.5, or as otherwise provided by law; and

28      41.    For such other and further relief as the Court may deem equitable and

1  appropriate.

2  **As to the Seventh Cause of Action**

3  42.    That the Court declare, adjudge and decree that Defendants violated California

4  Labor Code section 204 by willfully failing to timely pay Plaintiff and class members overtime

5  wages, minimum wages, and/or meal and rest period premiums during their employment;

6  43.    For all actual, consequential and incidental losses and damages, according to

7  proof;

8  44.    For statutory penalties according to proof pursuant to California Labor Code

9  section 210;

10  45.    For pre-judgment interest on any unpaid wages from the date such amounts were

11  due, or as otherwise provided by law;

12  46.    For attorneys' fees pursuant to California Code of Civil Procedure section

13  1021.5, or as otherwise provided by law; and

14  47.    For such other and further relief as the Court may deem equitable and

15  appropriate.

16  **As to the Eighth Cause of Action**

17  48.    That the Court declare, adjudge and decree that Defendants violated California

18  Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-related

19  expenses and costs incurred by Plaintiff and class members;

20  49.    For unpaid business-related expenses and such general and special damages as

21  may be appropriate;

22  50.    For pre-judgment interest on any unpaid business-related expenses from the date

23  such amounts were due, or as otherwise provided by law;

24  51.    For all actual, consequential, and incidental losses and damages, according to

25  proof;

26  52.    For attorneys' fees and costs pursuant to California Labor Code section 2802(c),

27  or as otherwise provided by law; and

28  53.    For such other and further relief as the Court may deem equitable and

appropriate.

**As to the Ninth Cause of Action**

54.     That the Court declare, adjudge and decree that Defendants violated the following California Labor Code provisions as to Plaintiff and/or other aggrieved employees: 510 and 1198 (by failing to pay all overtime compensation); 226.7, 510, and 1198 (by failing to include all forms of remuneration in the "regular rate" of pay for purposes of paying overtime wages and/or meal and rest period premiums); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512(a), 516, and 1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage statements and maintain accurate payroll records); 201 and 202 (by failing to timely pay all earned wages upon termination); 204 (by failing to timely pay all earned wages during employment); 212 and 213 (by failing to make earned wages accessible without discount); 221 and 224 (by collecting and/or receiving wages already paid); 223 (by secretly paying wages lower than required by statute); and 2802 (by failing to reimburse business expenses);

55.     For civil penalties pursuant to the California Labor Code, including sections 210, 225.5, 226.3, 256, 558, 1174.5, 2699(a), (f), and (g), for violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

56.     For attorneys' fees and costs pursuant to California Labor Code section 2699(g)(1), and any and all other relevant statutes, for Defendants' violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

57.     For pre-judgment and post-judgment interest as provided by law; and for such other and further relief as the Court may deem equitable and appropriate.

**As to the Tenth Cause of Action**

58.     That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiff and class members all overtime wages due to them, failing to include all

forms of remuneration in the "regular rate" of pay for purposes of paying overtime and/or meal period premiums to Plaintiff and class members, failing to provide Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and class members all meal periods, failing to authorize and permit Plaintiff and class members to take all rest periods, failing to provide Plaintiff and class members accurate and complete wage statements, failing to maintain accurate payroll records for Plaintiff and class members, failing to timely pay Plaintiff and class members all earned wages during employment, failing to provide access to wages upon demand and without discount, and failing to reimburse Plaintiff and class members for business-related expenses, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

59.    For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

60.    For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

61.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

62.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Eleventh Cause of Action**

63.    That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

64.    For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiff and class members and prejudgment interest from the day such amounts were due and payable;

1    65.    For the appointment of a receiver to receive, manage, and distribute any and all

2  funds disgorged from Defendants and determined to have been wrongfully acquired by

3  Defendants as a result of violations of California Business & Professions Code sections 17200,

4  *et seq.*;

5    66.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

6  California Code of Civil Procedure section 1021.5;

7    67.    For pre-judgment and post-judgment interest as provided by law; and

8  For such other and further relief as the Court may deem equitable and appropriate.

9

10  Dated: October 3, 2022                    Respectfully submitted,

11                                            Capstone Law APC

12

13                                 By:  _____

14                                            Orlando Villalba
                                              Helga Hakimi
15                                            Roxanna Tabatabaeepour

16                                            Attorneys for Plaintiff Nathan Verdugo

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT "1"



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

---

July 21, 2022

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/308)

Subject:      *Nathan Verdugo v. Bluescope Buildings North America, Inc., et al.*

Dear PAGA Administrator:

This office represents Nathan Verdugo in connection with his claims under the California Labor Code. Mr. Verdugo was an employee of BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; BLUESCOPE STEEL AMERICAS LLC; BLUESCOPE STEEL NORTH AMERICA CORPORATION; ASC PROFILES LLC; and/or STEELSCAPE LLC. For the purpose of this letter, Mr. Verdugo collectively refers to these entities as "BLUESCOPE."

The employers may be contacted directly at the addresses below:

BLUESCOPE BUILDINGS NORTH
AMERICA, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

BLUESCOPE CONSTRUCTION, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

BLUESCOPE STEEL AMERICAS LLC
200 PINE AVE STE 550
LONG BEACH, CA 90802

BLUESCOPE STEEL NORTH AMERICA
CORPORATION
1540 GENESSEE ST
KANSAS CITY, MO 64102

ASC PROFILES LLC
2110 ENTERPRISE BLVD
WEST SACRAMENTO, CA 95691

STEELSCAPE LLC
222 W KALAMA RIVER ROAD
KALAMA, WA 98625

Mr. Verdugo intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Mr. Verdugo seeks relief on behalf of himself, the State of California, and other persons who are or were employed by BLUESCOPE as a non-exempt, hourly paid employee in California and who received at least one wage statement

1

("aggrieved employees").  This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

BLUESCOPE employed Mr. Verdugo as an hourly paid, non-exempt employee from approximately February 2012 to March 2022.  Mr. Verdugo worked for BLUESCOPE as a Welder, Welder II, Weld Trainer, and Quality Inspector at its facility in Visalia, California.  During his employment, Mr. Verdugo typically worked ten (10) to eleven (11) hours per day and six (6) days per week.  As a Welder/Weld Trainer, Mr. Verdugo's primary job duties included, without limitation, welding beams, training other employees on welding, and assembling frames.  As a Quality Inspector, Mr. Verdugo's primary job duties included, without limitation, confirming beams were up to code, confirming welds matched the weld criteria, confirming products were built correctly, training other employees, and inspecting beams.

BLUESCOPE committed one or more of the following Labor Code violations against Mr. Verdugo, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c):[1]

### BLUESCOPE's Company-Wide and Uniform Payroll and HR Practices

BLUESCOPE BUILDINGS NORTH AMERICA, INC.; BLUESCOPE CONSTRUCTION, INC.; and BLUESCOPE STEEL NORTH AMERICA CORPORATION are Delaware corporations, and BLUESCOPE STEEL AMERICAS LLC and ASC PROFILES LLC are Delaware limited liability companies.  STEELSCAPE LLC is a California corporation.  Together, they are leading steel producers that provide steel materials, products, systems, and technologies across North America.  Upon information and belief, BLUESCOPE maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Kansas City, Missouri, for all non-exempt, hourly paid employees working for BLUESCOPE in California, including Mr. Verdugo and other aggrieved employees.  At all relevant times, BLUESCOPE issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Mr. Verdugo and other aggrieved employees, regardless of their location or position.

Upon information and belief, BLUESCOPE maintains a centralized Payroll department at its corporate headquarters in Kansas City, Missouri, which processes payroll for all non-exempt, hourly paid employees working for BLUESCOPE in California, including Mr. Verdugo and other aggrieved employees.  Further, BLUESCOPE issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Mr. Verdugo and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended.  In other words, BLUESCOPE utilized the same methods and formulas when calculating wages due to Mr. Verdugo and other aggrieved employees in California.

---

[1] These facts, theories, and claims are based on Mr. Verdugo's experience and counsel's review of those records currently available relating to Mr. Verdugo's employment.  Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations).  Thus, Mr. Verdugo reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

2

**Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime**

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

BLUESCOPE willfully failed to pay all overtime wages owed to Mr. Verdugo and other aggrieved employees. During the relevant time period, Mr. Verdugo and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant time period, BLUESCOPE had, and continues to have, a company-wide policy and/or practice of forcing Mr. Verdugo and other aggrieved employees to work off-the-clock performing tasks outside of their scheduled shift times, because BLUESCOPE did not provide a means to account for this time. For example, Mr. Verdugo and other aggrieved employees were required to change into personal protective equipment ("PPE"), such as hard hats, safety glasses, cut-resistant sleeves and arm guards, and steel-toed boots, at BLUESCOPE's facility. However, BLUESCOPE did not allow Mr. Verdugo and other aggrieved employees to report the time spent donning their PPE at the beginning of their shifts or to report the time spent doffing their PPE at the end of their shifts as hours worked, despite being on BLUESCOPE's premises and under BLUESCOPE's control, because the timeclock was located in an area only accessible to employees if they had PPE on. As a result, Mr. Verdugo and other aggrieved employees were required to spend about five (5) minutes donning PPE before clocking in prior to a shift, and about five (5) minutes doffing PPE after clocking out at the end of a shift. Further, BLUESCOPE only permitted Mr. Verdugo and other aggrieved employees to utilize a timekeeping machine located in a different building from the locker room where they changed, thus exacerbating the amount of time Mr. Verdugo and other aggrieved employees spent off-the-clock and under BLUESCOPE's control, time for which they were not paid.

Moreover, BLUESCOPE required Mr. Verdugo and other aggrieved employees to review newly-implemented company policies while off-the-clock. For example, Mr. Verdugo spent about an hour each year reviewing new policies at home, and was not paid for this time. Thus, BLUESCOPE failed to track all hours Mr. Verdugo and other aggrieved employees spent working before clocking in and/or after clocking out, and Mr. Verdugo and other aggrieved employees received no compensation for this time.

Second, Mr. Verdugo and other aggrieved employees were similarly required to spend up to five (5) minutes doffing their PPE when they left their work areas to take their unpaid meal periods, and were also required to spend up to five (5) minutes donning their PPE when they returned from their unpaid meal periods, and, as a result, Mr. Verdugo and other aggrieved employees were not always afforded compliant, uninterrupted thirty (30) minute meal periods during shifts in which they were entitled to receive meal periods.

Third, BLUESCOPE had, and continues to have, a company-wide practice or policy of requiring that Mr. Verdugo and other aggrieved employees carry and respond to a company-issued radio at all times. As a result, BLUESCOPE's management contacted Mr. Verdugo and other aggrieved employees on their company-issued radios during unpaid meal periods to discuss work-related matters. For example, Mr. Verdugo would have his meal periods interrupted and/or shortened at least once per month to discuss work-related tasks with BLUESCOPE's managers. BLUESCOPE knew or should have known that Mr. Verdugo and other aggrieved employees were performing work while off-the-clock in order to meet BLUESCOPE's expectations, but failed to compensate them for this time.

BLUESCOPE knew or should have known that as a result of these company-wide practices and/or policies, Mr. Verdugo and other aggrieved employees were performing their assigned duties off-the-clock and/or during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Mr. Verdugo and other aggrieved employees worked shifts of eight (8) hours or more a day, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Mr. Verdugo and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

Furthermore, BLUESCOPE did not pay Mr. Verdugo and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, BLUESCOPE paid Mr. Verdugo and other aggrieved employees incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration. However, in violation of the California Labor Code, BLUESCOPE failed to incorporate all compensation, including incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Mr. Verdugo and other aggrieved employees worked overtime and received these other forms of pay, BLUESCOPE failed to pay all overtime wages by paying a lower overtime rate than required.

For example, BLUESCOPE paid Mr. Verdugo and other aggrieved employees incentive pay and/or nondiscretionary bonuses which were listed on Mr. Verdugo's and other aggrieved employees' wage statements as "Gift Cert Earn." During pay periods that Mr. Verdugo and other aggrieved employees were paid overtime wages, BLUESCOPE did not incorporate the incentive pay and/or nondiscretionary bonuses into Mr. Verdugo's and other aggrieved employees' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked. Specifically, BLUESCOPE paid Mr. Verdugo and other aggrieved employees 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay. BLUESCOPE's failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Mr. Verdugo and other aggrieved employees on a company-wide basis.

BLUESCOPE's failure to pay Mr. Verdugo and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in Wage Order No. 1-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

As set forth above, BLUESCOPE maintained policies and/or practices requiring Mr. Verdugo and other aggrieved employees to perform work off-the-clock prior to the start of their shifts, after the end of their shifts, and/or on their days off, including donning and doffing PPE in a building separate from where timekeeping machines were located, and reviewing company policies at home.

Further, as also stated above, due to BLUESCOPE's donning/doffing policy and requirement that employees carry and use their company-issued radio to communicate with supervisors during unpaid meal periods, Mr. Verdugo and other aggrieved employees were impeded from taking all uninterrupted meal periods to which they were entitled and were not compensated for the time they continued to perform tasks during meal periods.

Thus, BLUESCOPE did not pay at least minimum wages for all hours worked by Mr. Verdugo and other aggrieved employees. To the extent that these off-the-clock hours did not qualify for overtime premium payment, BLUESCOPE did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Accordingly, BLUESCOPE regularly failed to pay at least minimum wages to Mr. Verdugo and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than

twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, during the relevant time period, as stated, BLUESCOPE had, and continues to have, a company-wide policy and/or practice of requiring employees to doff and don PPE when leaving and re-entering their work areas, which prevented Mr. Verdugo and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. For example, at the start and end of each meal period, Mr. Verdugo was required to doff and don his PPE while off-the-clock, which took about 10 minutes total. This policy led to significant delays at the start and end of each meal period, resulting in Mr. Verdugo's and other aggrieved employees' meal periods being cut short.

Second, as stated, BLUESCOPE had, and continues to have, a company-wide policy and/or practice of requiring that Mr. Verdugo and other aggrieved employees carry a company-issued radio to respond to requests during meal periods. As a result, BLUESCOPE's management contacted Mr. Verdugo and other aggrieved employees on their company-issued radios or in-person during meal periods to discuss work-related matters.

Third, BLUESCOPE did not provide Mr. Verdugo and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. During his employment, Mr. Verdugo worked shifts in excess of ten (10) or more hours per day several times, but was never provided a second 30-minute meal period. Mr. Verdugo and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

At all times herein mentioned, BLUESCOPE knew or should have known that, as a result of these policies, Mr. Verdugo and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. BLUESCOPE further knew or should have known that BLUESCOPE did not pay Mr. Verdugo and other aggrieved employees meal period premiums when meal periods were late, interrupted, shortened, and/or missed.

Furthermore, BLUESCOPE engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of this practice and/or policy, Mr. Verdugo and other aggrieved employees have not received premium pay for all missed, late, and interrupted meal periods. Alternatively, to the extent that BLUESCOPE did pay Mr. Verdugo and/or other aggrieved employees for missed, late, and interrupted meal periods, BLUESCOPE did not pay Mr. Verdugo and/or other aggrieved employees at the correct rate of pay for premiums because BLUESCOPE systematically failed to include all forms of compensation, such as incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, BLUESCOPE failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198. Mr. Verdugo and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods**

California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, BLUESCOPE regularly failed to authorize and permit Mr. Verdugo and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, BLUESCOPE's company-wide practices, including requiring that Mr. Verdugo and other aggrieved employees carry a company-issued radio to respond to requests, prevented Mr. Verdugo and other aggrieved employees from being able to take rest periods. As a result of BLUESCOPE's practices and policies, Mr. Verdugo and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled. For example, Mr. Verdugo's rest periods were interrupted at least once per month by management reaching out via radio or in person to discuss work-related matters.

Furthermore, BLUESCOPE maintained and implemented a company-wide on-premises rest period policy, which mandated that Mr. Verdugo and other aggrieved employees remain on the premises during their rest periods. Because Mr. Verdugo and other aggrieved employees were restricted from leaving BLUESCOPE's premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as purchasing beverages at a nearby store. Thus, BLUESCOPE effectively maintained control over Mr. Verdugo and other aggrieved employees during rest periods.

BLUESCOPE also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Mr. Verdugo and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that BLUESCOPE did pay Mr. Verdugo and/or other aggrieved employees one (1) additional hour of premium pay for missed rest periods, BLUESCOPE did not pay Mr. Verdugo and/or other aggrieved employees at the correct rate of pay for premiums because BLUESCOPE failed to include all forms of compensation, such as incentive pay, nondiscretionary bonuses, shift differential pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, BLUESCOPE failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198. Mr. Verdugo and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. BLUESCOPE has not provided Mr. Verdugo and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wage statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation occurs and $100 per violation for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, BLUESCOPE has knowingly and intentionally provided Mr. Verdugo and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, BLUESCOPE issued uniform wage statements to Mr. Verdugo and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; the address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and/or meal and rest period premiums, and the corresponding number of hours worked at each hourly rate. Specifically, BLUESCOPE violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9).

First, because BLUESCOPE did not record the time Mr. Verdugo and other aggrieved employees spent working off-the-clock, BLUESCOPE did not list the correct amount of gross wages and net wages earned by Mr. Verdugo and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, BLUESCOPE failed to accurately list the total number of hours worked by Mr. Verdugo and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Second, because BLUESCOPE did not calculate Mr. Verdugo's and other aggrieved employees' regular rate of pay correctly for purposes of paying overtime wages and/or meal and rest period premiums, BLUESCOPE did not list the correct amount of gross wages in compliance with section 226(a)(1) and did not list the correct amount of net wages in violation of section 226(a)(5). BLUESCOPE also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct rates of pay for overtime wages and/or meal and rest period premiums, in violation of section 226(a)(9).

Third, and separate from these violations, BLUESCOPE issued uniform wage statements to Mr. Verdugo and other aggrieved employees that failed to correctly list the address of the legal entity of the actual employer in violation of 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the

employee to contact their employer during employment or in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc.  This includes providing employees with a physical address of the employer and not a Post Office Box.  Mr. Verdugo's and other aggrieved employees' wage statements incorrectly list the employer's address as "PO Box 419917, Kansas City, MO 64141" but, according to the California Secretary of State's website, the correct address is "1540 Genessee St, Kansas City, Missouri 64102."

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), BLUESCOPE willfully failed to maintain accurate payroll records for Mr. Verdugo and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, BLUESCOPE failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Mr. Verdugo and other aggrieved employees, in violation of section 1198.  Furthermore, in light of BLUESCOPE's failure to provide Mr. Verdugo and other aggrieved employees with second 30-minute meal periods to which they were entitled, BLUESCOPE kept no records of meal start and end times for second meal periods.

Because BLUESCOPE failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Mr. Verdugo and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Mr. Verdugo and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

9

Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, BLUESCOPE failed to pay Mr. Verdugo and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within any time period specified by California Labor Code section 204.

Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 201 and 202 – Failure to Timely Pay Final Wages Upon Termination

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

BLUESCOPE willfully failed to pay Mr. Verdugo and other aggrieved employees who are no longer employed by BLUESCOPE all their earned wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving BLUESCOPE's employ.

Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 212 and 213 – Unlawful Direct Deposit and Discount of Wages

California Labor Code section 212 prohibits employers from issuing any instruments for the payment of wages unless such instruments are negotiable and payable in cash on demand and without discount. California Labor Code section 213 permits employers to pay employees via direct deposit

so long as the employee authorizes payment via direct deposit.  Under California law, employers are also permitted to fulfill their wage payment obligations to employees by using payroll debit cards, but only under certain circumstances.  Employer use of payroll debit cards is permitted only so long as the employee is given the choice as to whether to accept a payroll debit card as a form of payment. *Johnson v. Sunrise Senior Living Management, Inc.*, No. 16 CV 00443 BRO RAOx, 2016 WL 8929249, *9 (C.D. Cal. May 5, 2016).  In *Johnson*, the court stated that the Division of Labor Standards Enforcement ("DLSE") decision deeming payroll debit card program permissible relied heavily on:

> . . . [T]he fact that the pay programs were optional, thereby allowing an employee to either participate in the program or receive his or her pay in some other way, such as direct deposit.  Specifically, the DLSE opined that "[t]he success of the described procedure, in practice, will of course require that . . . it is presented as an *alternative* method for wage payment for which [the employees'] participation is optional."  The DLSE also stated, "'[i]t is significant that the program does not mandate employee participation in the Money Network Service and that it is designed to provide an alternative for employees receiving their wage payment. Employees are also given the option of having their pay direct deposited into an account of their choosing. . . ." (internal citations omitted).

In addition, employers can only utilize payroll debit card programs if they provide employees with effective access to their wages without discount.  The DLSE has interpreted Labor Code sections 212 and 213 as permitting employer use of payroll debit cards where the following requirements are satisfied:

> (1) [T]he "wages [are] payable at some established place of business in the state and there be at least 30 days of sufficient funds for payment,"
> (2) the employees are "fully informed of the service and procedures and that it is represented as an alternative method for wage payment for which their participation is optional,"
> (3) the employees receive "an itemized wage statement," and
> (4) "at least one transaction per pay period [is] without fee."

*Ortiz v. Randstad North America, L.P.*, No. C-13-5050 MMC, 2015 WL 6202298 at 3.

Further, the DLSE notes that the Labor Code manifests:

> . . . [A] strong public policy that prohibits an employer (or its agent) from imposing conditions or obstacles which interfere with or prevent an employee's (sic) from promptly receiving their due wages in *full*.  The imposition of a fee in order to readily *access* one's earned and paid wages under a payroll card program which is designed to discharge the employer's wage payment obligations could impermissibly interfere with an employee's receipt of paid wages by creating a financial condition which would have the *effect* of reducing or discounting wages because such fee would be charged against the same account in which wages are deposited. (emphases in original)

*DLSE opinion letter* 2008.07.07.  The DLSE has also acknowledged that payroll service providers "effectively act as agents of the client employers in discharging the employer's wage payment

11

obligations." *Id.*  In a second opinion letter, the DLSE stated that "[w]hile the Labor Code does not purport to regulate the specific arrangements between employers and payroll service providers, both an employer and, under the express language in Labor Code § 212- their *agent*, must comply with its requirements." *DLSE opinion letter* 2008.07.07.2.

During the relevant time period, BLUESCOPE had a practice and/or policy of automatically issuing payroll debit cards to departing employees without giving them the option to elect their form of payment for their final wages.  For example, Mr. Verdugo received his final wages on a payroll debit card without a choice of an alternate method of payment, such as a written check.  Instead, BLUESCOPE automatically enrolled Mr. Verdugo in its payroll debit card program for the purpose of issuing Mr. Verdugo's final wages to him without prior, voluntary approval from Mr. Verdugo.

Moreover, under BLUESCOPE's payroll debit card program, on information and belief, other aggrieved employees did not have easy access to the entirety of their wages without incurring a fee.  For example, other aggrieved employees were unable to withdraw their entire wages in at least one transaction without incurring a fee and/or encountered $3.00 ATM fees each time they utilized an out-of-network ATM to withdraw funds from their payroll debit cards, which resulted in a discount in their pay.

Thus, BLUESCOPE's payroll debit card program was and continues to be unlawful as it does not give employees the choice as to whether they would like to receive their wages on a payroll debit card or via some other payment method and did not give Mr. Verdugo and/or other aggrieved employees easy access to the entirety of their wages without discount and without delay.

California courts recognize a policy favoring the full and prompt payment of wages to employees.  BLUESCOPE's payroll card program is inconsistent with this policy because it presents a number of obstacles and hurdles that, together, make it difficult for Mr. Verdugo and/or other aggrieved employees to access their entire wages without discount and without delay, in violation of California Labor Code sections 212 and 213.  Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 225.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 221 and 224 – Unlawful Deductions

California Labor Code section 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.  California Labor Code section 224 also provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a deduction is expressly authorized in writing by the employee."

During the relevant time period, BLUESCOPE unlawfully deducted a portion of wages previously paid to other aggrieved employees in violation of California Labor Code section 221.  On information and belief, BLUESCOPE systematically, and on a company-wide basis, provided other aggrieved employees with payroll debit cards as payment of their wages.  Under BLUESCOPE's payroll debit card program, other aggrieved employees were assessed various fees in connection with their use of the payroll debit cards.  For example, other aggrieved employees were required to pay per-transaction fees, ATM fees, and/or other fees to obtain and/or spend their earned and due wages.  The fees charged to other aggrieved employees resulted in a discount of their wages.

BLUESCOPE's payroll debit card program, which resulted in a discount of wages to employees, is tantamount to taking deductions from other aggrieved employees' paychecks without their written authorization and therefore constitutes an unlawful deduction of wages, in violation of California Labor Code sections 221 and 224.  Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 225.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 223 – Secret Payment of Lower Wages

California Labor Code section 223 makes it unlawful for an employer to secretly pay wages lower than required by statute while purporting to pay legal wages.

During the relevant time period, BLUESCOPE willfully and systematically issued payroll debit cards to other aggrieved employees that discounted their wages by charging various fees in connection with the use of the payroll debit cards.  BLUESCOPE's payroll debit card program resulted in the payment of less than statutorily required wages to other aggrieved employees.  In doing so, BLUESCOPE acted with the intent to deprive other aggrieved employees of statutory wages, including, but not limited to, overtime wages and/or minimum wages, to which they were entitled to under California law.  Thus, BLUESCOPE paid other aggrieved employees lower wages than those they were entitled to while purporting that other aggrieved employees were properly paid.

BLUESCOPE's failure to pay other aggrieved employees the correct designated wage, while purporting to pay legal wages, is a violation of California Labor Code section 223.  Other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 225.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 2802 – Unreimbursed Business Expenses

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc*., 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order No. 1-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

During the relevant time period, Mr. Verdugo and other aggrieved employees were required to use their personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties, but BLUESCOPE failed to reimburse them for the costs of their work-related mobile device expenses.  For example, Mr. Verdugo was required to use his personal cellular phone to take and send photographs of equipment and to communicate with management about work-related matters when the phone at his work site was not working.  Although BLUESCOPE required Mr. Verdugo and other aggrieved employees to utilize their personal mobile devices to carry out their work-related responsibilities, BLUESCOPE failed to reimburse them for these costs.

BLUESCOPE could have provided Mr. Verdugo and other aggrieved employees with the actual equipment for use on the job, such as company mobile devices, or BLUESCOPE could have

reimbursed employees for their mobile device usage.  Instead, BLUESCOPE passed these operating costs off onto Mr. Verdugo and other aggrieved employees.

Thus, BLUESCOPE had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802.  Mr. Verdugo and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . .  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ."  Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."  BLUESCOPE, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Verdugo's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Verdugo seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees.  Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), 2699.5, and 558, Mr. Verdugo, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for himself, all other aggrieved employees, and the State of California against BLUESCOPE for violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

Therefore, on behalf of all aggrieved employees, Mr. Verdugo seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Anthony Castillo
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Anthony Castillo

Copy: BLUESCOPE BUILDINGS NORTH AMERICA, INC. (via U.S. Certified Mail); BLUESCOPE CONSTRUCTION, INC. (via U.S. Certified Mail); BLUESCOPE STEEL AMERICAS LLC (via U.S. Certified Mail); BLUESCOPE STEEL NORTH AMERICA CORPORATION (via U.S. Certified Mail); ASC PROFILES LLC (via U.S. Certified Mail); STEELSCAPE LLC (via U.S. Certified Mail)

Capstone
LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067

BLUESCOPE BUILDINGS NORTH
AMERICA, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

CERTIFIED MAIL

7021 1970 0000 2660 0504

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BLUESCOPE BUILDINGS NORTH
AMERICA, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

9590 9402 5816 0034 8458 71

2. Article Number (Transfer from service label)

7021 1970 0000 2660 0504

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                              ☐ Agent
                                               ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)         $
☐ Return Receipt (electronic)       $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$

Postmark
Here

7021 1970 0000 2660 0504

BLUESCOPE BUILDINGS NORTH AMERICA, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Capstone
LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067

BLUESCOPE CONSTRUCTION, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

CERTIFIED MAIL

7021 1970 0000 2660 0511

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BLUESCOPE CONSTRUCTION, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

9590 9402 5816 0034 8458 88

2. Article Number (Transfer from service label)
7021 1970 0000 2660 0511

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7021 1970 0000 2660 0511

Certified Mail Fee    $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery    $
☐ Adult Signature Required    $
☐ Adult Signature Restricted Delivery $

Postage    $

Total Postage and Fees
$

Postmark
Here

BLUESCOPE CONSTRUCTION, INC.
1540 GENESSEE STREET
KANSAS CITY, MO 64102

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Capstone
LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067

7021 1970 0000 2660 0528

**CERTIFIED MAIL**

BLUESCOPE STEEL AMERICAS LLC
200 PINE AVE STE 550
LONG BEACH, CA 90802

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

BLUESCOPE STEEL AMERICAS LLC
200 PINE AVE STE 550
LONG BEACH, CA 90802

9590 9402 5816 0034 8458 95

2. Article Number (Transfer from service label)

7021 1970 0000 2660 0528

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☒ Certified Mail®                     ☐ Registered Mail Restricted
☐ Certified Mail Restricted Delivery     Delivery
☐ Collect on Delivery                 ☐ Return Receipt for
☐ Collect on Delivery Restricted Delivery  Merchandise
☐ Insured Mail                        ☐ Signature Confirmation™
☐ Insured Mail Restricted Delivery    ☐ Signature Confirmation
  (over $500)                            Restricted Delivery

Domestic Return Receipt

---



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7021 1970 0000 2660 0528

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$

Postmark
Here

BLUESCOPE STEEL AMERICAS LLC
200 PINE AVE STE 550
LONG BEACH, CA 90802

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

Capstone
LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

BLUESCOPE STEEL NORTH AMERICA
CORPORATION
1540 GENESSEE ST
KANSAS CITY, MO 64102

9590 9402 5816 0034 8459 01

2. Article Number (Transfer from service label)

7021 1970 0000 2660 0535

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature                    □ Priority Mail Express®
□ Adult Signature Restricted Delivery □ Registered Mail™
□ Certified Mail®                    □ Registered Mail Restricted
□ Certified Mail Restricted Delivery   Delivery
□ Collect on Delivery                □ Return Receipt for
□ Collect on Delivery Restricted Delivery  Merchandise
□ Insured Mail                       □ Signature Confirmation™
□ Insured Mail Restricted Delivery   □ Signature Confirmation
   (over $500)                         Restricted Delivery

Domestic Return Receipt

BLUESCOPE STEEL NORTH AMERICA
CORPORATION
1540 GENESSEE ST
KANSAS CITY, MO 64102

**CERTIFIED MAIL®**

7021 1970 0000 2660 0535



7021 1970 0000 2660 0535

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
□ Return Receipt (hardcopy)         $
□ Return Receipt (electronic)        $
□ Certified Mail Restricted Delivery $
□ Adult Signature Required           $
□ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$

Postmark
Here

BLUESCOPE STEEL NORTH AMERICA CORPORATION
1540 GENESSEE ST
KANSAS CITY, MO 64102

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Capstone
LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067

ASC PROFILES LLC
2110 ENTERPRISE BLVD
WEST SACRAMENTO, CA 95691

**CERTIFIED MAIL**

7021 1970 0000 2660 0542

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

ASC PROFILES LLC
2110 ENTERPRISE BLVD
WEST SACRAMENTO, CA 95691

9590 9402 5816 0034 8459 18

2. Article Number (Transfer from service label)

7021 1970 0000 2660 0542

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery
  (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted
  Delivery
□ Return Receipt for
  Merchandise
□ Signature Confirmation™
□ Signature Confirmation
  Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
□ Return Receipt (hardcopy)        $
□ Return Receipt (electronic)      $
□ Certified Mail Restricted Delivery $
□ Adult Signature Required         $
□ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$

Postmark
Here

7021 1970 0000 2660 0542

ASC PROFILES LLC
2110 ENTERPRISE BLVD
WEST SACRAMENTO, CA 95691

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Capstone
LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067

CERTIFIED MAIL

7021 1970 0000 2660 0559

STEELSCAPE LLC
222 W KALAMA RIVER ROAD
KALAMA, WA 98625

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

STEELSCAPE LLC
222 W KALAMA RIVER ROAD
KALAMA, WA 98625

9590 9402 5816 0034 8459 25

2. Article Number (Transfer from service label)

7021 1970 0000 2660 0559

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                  ☐ Agent
                                    ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   ($500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7021 1970 0000 2660 0559

Certified Mail Fee    $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)    $
☐ Return Receipt (electronic)  $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required     $
☐ Adult Signature Restricted Delivery $

Postage    $

Total Postage and Fees
$

STEELSCAPE LLC
222 W KALAMA RIVER ROAD
KALAMA, WA 98625

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BLUESCOPE STEEL AMERICAS LLC
200 PINE AVE STE 550
LONG BEACH, CA 90802

9590 9402 5816 0034 8458 95

2. Article Number *(Transfer from service label)*

7021 1970 0000 2660 0528

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**ASC PROFILES LLC**

**2110 ENTERPRISE BLVD**

**WEST SACRAMENTO, CA 95691**

9590 9402 5816 0034 8459 18

2. Article Number *(Transfer from service label)*

7021 1970 0000 2660 0542

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  *Greg Strunau*

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

*Greg Shaker*

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**BLUESCOPE BUILDINGS NORTH AMERICA, INC.**
**1540 GENESSEE STREET**
**KANSAS CITY, MO 64102**

9590 9402 5816 0034 8458 71

2. Article Number *(Transfer from service label)*

7021 1970 0000 2660 0504

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**BLUESCOPE CONSTRUCTION, INC.**
**1540 GENESSEE STREET**
**KANSAS CITY, MO 64102**

9590 9402 5816 0034 8458 88

2. Article Number *(Transfer from service label)*

7021 1970 0000 2660 0511

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

7-27-2

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**BLUESCOPE STEEL NORTH AMERICA CORPORATION**
**1540 GENESSEE ST**
**KANSAS CITY, MO 64102**

9590 9402 5816 0034 8459 01

2. Article Number *(Transfer from service label)*

7021 1970 0000 2660 0535

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
2-27-22

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt